# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** <br> **Jody M. Nebeker,** <br><br> **Debtor.** | **Bankruptcy Case** <br> **No. 16-40819-JDP** |

_____

| | |
|---|---|
| **R. Sam Hopkins,** <br> **Chapter 7 Trustee,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **Jody M. Nebeker,** <br><br> **Defendant.** | **Adv. Proceeding** <br> **No. 17-08026-JDP** |

_____

### MEMORANDUM OF DECISION
_____

Appearances:

   Heidi Buck-Morrison, RACINE OLSON NYE BUDGE & BAILEY, CHTD, Pocatello, Idaho, Attorney for Plaintiff.

   Aaron Tolson, TOLSON & WAYMENT, PLLC, Ammon, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION – 1

*Introduction*

Chapter 7[1] trustee R. Sam Hopkins ("Trustee") commenced this adversary proceeding, seeking a money judgment against Jody Michael Nebeker ("Debtor") and a revocation of his bankruptcy discharge. Dkt. No. 1. Debtor, through counsel, filed an answer to the complaint. Dkt. No. 6. After the parties filed pretrial memoranda concerning the issues, Dkt. Nos. 9 and 16, the Court conducted a trial in the matter on January 8, 2018. Dkt. No. 24.

At the outset of the trial, counsel for Trustee made an oral motion for entry of a judgment on the pleadings. After hearing arguments concerning the motion by the parties, the Court took Trustee's motion under advisement. The parties then proceeded to present evidence and testimony concerning the merits of the issues, and opted to make oral closing arguments. The Court then took the issues under advisement.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION – 2

Having considered the testimony, evidence, briefs and arguments, as well as the applicable law, this Memorandum sets forth the Court's findings of fact, conclusions of law, and reasons for its decision. Rules 7052; 9014.

*Facts*

On September 2, 2016, Debtor filed a chapter 13 petition. Ex. 100. In his schedules, Debtor disclosed that he owned two Western semi-trailers, a 2001 BMW Roadstar ("the Roadstar"), and a travel trailer, a 1979 Holiday Rambler. Ex. 100 at 10–12. Debtor also disclosed that he held a 95% equity interest in a corporation, Nebeker Trucking Inc. Dkt. No. 100 at 14. Debtor testified that his father owns the other 5% of the stock in this company.

On November 2, 2016, the Court granted Debtor's motion to convert his bankruptcy case to chapter 7, and Trustee was appointed. Bk. Dkt.[2] No. 40. On January 18, 2017, Debtor attended a § 341(a) meeting of creditors. Bk. Dkt. No. 53. He testified in response to Trustee's questions that, in

---

[2] The Court takes judicial notice of its docket in the main bankruptcy case underlying this adversary proceeding, No. 16-40819-JDP ("Bk. Dkt.").

MEMORANDUM OF DECISION – 3

addition to the vehicles listed in his schedules, he owned a 2006 Peterbilt semi-truck ("the Truck") and a third Western semi-trailer, both of which he used in connection with his trucking business.[3]

On February 17, 2017, Trustee filed a motion for turnover directed to Debtor concerning the Truck, the Western Trailer VIN number 501 ("the Trailer),[4] the Roadstar, and the Rambler. Bk. Dkt. No. 55. Debtor opposed the motion and a hearing was set for April 26, 2017. Bk. Dkt. Nos. 60, 62. Six days prior to the hearing, Debtor's counsel emailed Trustee, asking if he would accept $50,000 to allow Debtor to retain possession and ownership of the Truck, the Trailer, and the Roadstar.[5] Ex. 101. Trustee agreed to the deal, but subject to the condition that Debtor pay him a

---

[3] Debtor acknowledged during his trial testimony that none of the vehicles and trailers are exempt.

[4] Trustee testified that the other two Western semi-trailers were not included in the turnover motion because Debtor had already surrendered them to him.

[5] The emails do not make clear what property was included in this deal. Ex. 101. But Debtor testified that he intended to pay the $50,000 for the Truck, the Trailer, and the Roadstar. Trustee's testimony was consistent with this, in that he testified that Debtor agreed to turn over only two of the Western trailers and the Rambler.

MEMORANDUM OF DECISION – 4

$5,000 deposit toward the retention price prior to the hearing. Debtor failed to make the deposit prior to the hearing, and after hearing from the parties, on April 28, 2017, the Court granted Trustee's motion and entered an order requiring Debtor to "forthwith" turn over the Truck, the Trailer, the Roadstar, and the Rambler to Trustee. Bk. Dkt. No. 69; Ex. No. 103. On May 1, 2017, Trustee received a check from Debtor for $5,000. Ex. 102. And, at some point, Debtor turned over the Rambler to Trustee. Debtor's discharge was entered on June 6, 2017. Dkt. No. 74.

Trustee testified that he thereafter demanded that Debtor pay him the $45,000 balance of the retention price for the vehicles at least a "half-a-dozen" times, and that he spoke frequently with Debtor's counsel about the payment and Debtor's obligation to turn over the truck and trailers. Trustee could not recall if he ever imposed a deadline on Debtor to make the payment. However, Trustee testified that he provided a copy of the complaint he proposed to be filed in this adversary proceeding to Debtor and his lawyer, and told Debtor that if he did not pay the $45,000, or turn over the property, Trustee would file it.

MEMORANDUM OF DECISION – 5

When he did not receive either the payment or the property, on July 21, 2017, Trustee commenced this adversary proceeding against Debtor, seeking a judgment enforcing the Order for Turnover and revoking Debtor's discharge pursuant to § 727(a)(6)(A).  Compl. at 2, Dkt. No. 1.[6]  On September 11, 2017, Debtor, through counsel, filed an "answer" to the complaint which failed to either admit or deny any of the allegations in the complaint.  Answer at 1–2, Dkt. No. 6.  Instead, the answer alleges only that "Debtor contacted his attorney today and advised that he was finally able to obtain the funds to complete the purchase of his items from the estate."  *Id.*

At trial, Debtor testified that, while he was aware of the existence and substance of the turnover order, he made a considered, conscious decision to not turn over the Truck and Trailer to Trustee because, without them, he could not make a living nor make good on his deal with Trustee.

---

[6] Trustee's complaint originally also sought a money judgment against Debtor for the scheduled value of the assets, $136,300.  At trial, counsel for Trustee abandoned this demand, without objection from Debtor, apparently deciding to simply rely on the original turnover order, and to reclaim and sell the Truck and Trailer.

MEMORANDUM OF DECISION – 6

Debtor testified that to pay Trustee the remaining $45,000 for retention of the property, his father attempted to refinance his home mortgage. Ex. 200. Indeed, a letter to Debtor's father from the Bank of Commerce indicates that Debtor's father had been pre-approved for a $44,000 loan on October 18, 2017 conditioned upon clear title for the home. Ex. 200. However, complications apparently arose concerning the title to the home that prevented Debtor's father from accessing the loan funds. More particularly, at some point, the State of Idaho Industrial Commission obtained a judgment jointly against Debtor and his father for over $20,000 for a debt related to Nebeker Trucking, Inc., which judgment constituted a lien against Debtor's father's home. When the bank discovered the lien, it informed Debtor's father that any funds from the loan must first be used to pay off the judgment lien so the bank's mortgage could be first priority on the house.

Recognizing that using $20,000 to pay off the Industrial Commission's judgment lien would leave insufficient loan proceeds to pay Trustee to retain Debtor's vehicles, Debtor testified he attempted to

MEMORANDUM OF DECISION – 7

negotiate a resolution with the Industrial Commission, but was unsuccessful. He testified that his father also attempted to persuade the bank to increase the amount of the loan to provide sufficient funds to pay off both the Industrial Commission and Trustee. The bank declined to increase the loan amount, limiting the available funds to $44,000. Ex. 200.

At trial, in addition to revocation of Debtor's discharge, Trustee testified that he is still holding the $5,000 deposit payment from Debtor, and that he would like to retain these funds as "liquidated damages" to compensate the estate for Debtor's use of the truck and other items from the date of entry of the turnover order.

*Analysis and Disposition*

**I.     Judgment on the Pleadings**

As noted above, at the commencement of trial, counsel for Trustee made an oral motion for entry of a judgment on the pleadings. Trustee argues he is entitled to such a judgment because Debtor failed to deny any

of the allegations in his complaint, and therefore, under Civil Rule 8(b)(6),[7] Debtor is deemed to have admitted the allegations.  While Trustee's position concerning Debtor's answer is justified, the Court declines to grant Trustee's last-minute motion.

Civil Rule 12(c), made applicable in adversary proceedings by Rule 7012(b), provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." While Trustee argued Debtor's admissions precluded the need for a trial in his pretrial memorandum, he did not make a motion for judgment on the pleadings until the outset of the trial.  *See* Tr.'s Mem. at 4, Dkt. No. 16. Trustee's attorney's tactic of waiting until the beginning of the trial to offer the motion was at best, regrettable, and at worst, an inappropriate litigation tactic.  Clearly, any thoughtful consideration of the motion by the

---

[7] Civil Rule 8(b)(1)(B) requires that, in responding to a pleading, such as a complaint, the defendant "must . . . admit or deny the allegations asserted against it by an opposing party."  Civil Rule 8(b)(6) provides that "[a]n allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."  These Civil Rules are made applicable in adversary proceedings by Rule 7008.

MEMORANDUM OF DECISION – 9

Court at that time would have delayed the trial. In addition, Debtor had no notice that, instead of a trial on the merits, Trustee would be seeking to short-cut the process via the motion.

Moreover, Trustee's complaint seeks one of the most serious and punitive remedies under the Code to address Debtor's intransigence in complying with the turnover order: a revocation of Debtor's discharge. This is a remedy not lightly granted by the Court, and even if it is appropriate, the development of a detailed factual record is required before it is imposed. A judgment on the pleadings based upon a deficient answer by Debtor to Trustee's complaint is not sufficient to persuade the Court to forego consideration of relevant evidence before acting.

In the exercise of the Court's discretion, because it was not timely under Civil Rule 12(c), and because the Court feels compelled to consider the issues on the merits, the Trustee's motion is denied.[8]

---

[8] Debtor's attorney's decision to file an answer which failed to comply with the requirements of Rules to respond to the specific allegations of the complaint put his client in an extremely precarious situation. No justification was offered for this risky tactic.

MEMORANDUM OF DECISION – 10

**II. Revocation of Discharge**

Trustee argues that Debtor's discharge should be revoked under §§ 727(d)(3) and 727(a)(6)(A) because he knowingly refused to comply with the Court's turnover order requiring him to deliver possession of the Truck, the Trailer, and the Roadstar to Trustee. Tr.'s Mem. at 6–8. Debtor admits he did not comply with the order; however, he argues he was justified in refusing to do so because, had he turned over the property, he could not have made good on his deal with Trustee, and could not have made a living. Debtor's Br. at 1–3.

Under § 727(d)(3), once a discharge is entered, it may be revoked if the debtor violates § 727(a)(6), or in the language of the Code, if "(6) the debtor has refused, in this case—(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]" "An order is lawful if it is issued by a court with jurisdiction over the subject and the person to whom the order is directed." *Rainsdon v. Anderson (In re Anderson)*, 526 B.R. 821, 825–26 (Bankr. D. Idaho 2015) (citations omitted). Trustee has the burden of proving grounds exist to revoke a discharge by a

MEMORANDUM OF DECISION – 11

preponderance of the evidence. *Hopkins v. Hugues (In re Hugues)*, 349 B.R. 72, 78 (Bankr. D. Idaho 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991); *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 730 (9th Cir. BAP 1999); Rule 4005). If Trustee produces sufficient evidence to show a basis to revoke Debtor's discharge, the burden then shifts to Debtor to explain his behavior to the Court's satisfaction. *In re Anderson*, 526 B.R. at 826 (citing *Hicks v. Decker (In re Hicks)*, 2006 WL 6810987, *8 (9th Cir. BAP Feb 1, 2006)); *see also Gugino v. Cardenas (In re Cardenas)*, 2011 WL 3510941, *2 (Bankr. D. Idaho August 10, 2011).

A trustee seeking to revoke a discharge pursuant to §§ 727(d)(3) and (a)(6)(A) must show that the debtor (a) was aware of the order; and (b) willfully or intentionally refused to obey the order (i.e., something more than a mere failure to obey the order through inadvertence, mistake or inability to comply). *In re Anderson*, 526 B.R. at 826 (citing *Schwarzkopf v. Goodrich (In re Michaels )*, 2009 WL 7809926, at *5 (9th Cir. BAP Feb. 27, 2009) (citing *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 434 (4th Cir. 2008))); *see also U.S. Trustee v. Lebbos (In re Lebbos)*, 439 B.R. 154, 164–65 (E.D. Cal.

MEMORANDUM OF DECISION – 12

2010), *aff'd*, 529 F. App'x 854 (9th Cir. 2013) (citing *In re Jordan*, 521 F.3d at 433–434). Ultimately, it is "totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge." *Devers v. Bank of Sheridan, Mont.* (*In re Devers*), 759 F.2d 751, 755 (9th Cir. 1985).

Here, Trustee has shown by a preponderance of the evidence that Debtor was aware of the turnover order and that he knowingly refused to comply with its terms. Debtor has not shown that his refusal stemmed from inadvertence, mistake or inability to comply with the order.

Debtor's best course of action would have been to comply with the turnover order, deliver the Truck, the Trailer, and the Roadstar to Trustee, and then attempt to reacquire them from the estate before they were otherwise liquidated. Instead of doing so, Debtor argues that he was justified in not turning over the property because of his unexecuted "deal" with Trustee.

Under these facts, perhaps Debtor was justified in refusing to comply with the turnover order for a time. Debtor showed his good faith

MEMORANDUM OF DECISION – 13

to follow through on the arrangement with Trustee by making a deposit for the retention price, albeit payment of the deposit was untimely. Moreover, Trustee could not recall if he expressed a time limit for Debtor to pay the balance of the purchase price. Debtor's discharge was therefore arguably safe for a reasonable time while Debtor attempted to perform his obligations under the deal.

But Debtor's decision to ignore the turnover order was not immune from question forever. Although his deal with Trustee may not have included a specific time by which Debtor must perform, for the six months after Trustee commenced this action and before trial, Debtor should have been keenly aware of Trustee's position and what was at stake. Yet, even as of the date of trial, Debtor had still failed to comply with the turnover order.

More particularly, in July 2017, after making numerous demands to Debtor and his attorney that he either pay the remaining $45,000 or turn over the property, Trustee made his intent to seek revocation of Debtor's discharge crystal clear when he sent Debtor a copy of the proposed

MEMORANDUM OF DECISION – 14

complaint. At that point, Debtor must surely have known that his discharge was at risk. Yet, despite Trustee's insistence that he comply, Debtor refused to turn over the vehicles. Debtor admits that he consciously ignored the turnover order and that his actions were not the result of an oversight or a mistake.

Of course, it is unfortunate for all concerned that complications arose that prevented Debtor from obtaining the funding from his father to retain the Truck, the Trailer, and the Roadstar. But when Debtor sought the protection of the bankruptcy court to shield him from his creditors, he "assumed a duty to participate in that proceeding by obeying the court's lawful orders." *In re Devers*, 759 F.2d at 755. And although denial, or in this case revocation, of discharge "can work a serious deprivation" it "is not to be read, however, as minimizing the debtor's offense in disobeying a lawful order[.]" *Id.* The integrity of the bankruptcy process requires that debtors "among other things . . . surrender all property of the estate to trustee . . . and obey the bankruptcy court's lawful orders." *Onubah v. Zamora (In re Onubah)*, 374 B.R. 549, 557 (9th Cir. BAP 2007) (citing

MEMORANDUM OF DECISION – 15

§ 727(a)(6)(A)).[9]

The Court finds that Debtor willfully and intentionally refused to obey a lawful order of the Court. On these facts, in the exercise of its discretion, the Court concludes that Debtor's refusal was sufficiently serious as to require a revocation of his discharge under § 727(d)(3) and § 727(a)(6)(A).

## III. Liquidated Damages

At trial, Trustee sought to retain the $5,000 payment made to him by Debtor under the aborted retention deal as "liquidated damages" to compensate the bankruptcy estate for any depreciation in value of the vehicles from Debtor's continued use of them from the entry of turnover order through trial. While perhaps deserving credit for ingenuity for this argument, Trustee has not shown any legal basis to retain these funds as liquidated damages, or otherwise, for that matter.

Of course, liquidated damages are generally understood to be "an

---

[9] As this Court has previously explained, turnover orders merely reinforce the requirement of § 521(a)(4) that debtors surrender all property of the estate to trustees. *In re Espinoza*, 03.3 IBCR 185, 186 (Bankr. D. Idaho 2003).

MEMORANDUM OF DECISION – 16

amount contractually stipulated as a reasonable estimate of actual damages to be recovered by one party if the other party breaches." *Liquidated Damages*, BLACKS LAW DICTIONARY (10th ed. 2014).  Under Idaho law "[g]enerally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages." *Magic Valley Truck Brokers, Inc. v. Meyer*, 982 P.2d 945, 952 (Idaho Ct. App. 1999).

Here, Trustee offered no evidence to show that his deal with Debtor included liquidated damages provisions entitling Trustee to retain the $5,000 deposit if Debtor failed to pay the balance of the retention price.  In addition, Trustee offered no evidence concerning the comparative values of the vehicles as of the date of entry of the turnover order and now to prove that they had depreciated through Debtor's continued possession and use of them.  On this record, Trustee has not shown he is entitled to retain the $5,000 payment as liquidated damages.

MEMORANDUM OF DECISION – 17

*Conclusion*

Trustee's motion for a judgment on the pleadings is denied as untimely. However, after considering the evidence and testimony at trial, the Court concludes that Debtor's discharge should be revoked under § 727(d)(3) and § 727(a)(6)(A) for his knowing and willful refusal to obey the turnover order. Trustee's request to retain the $5,000 paid to him by Debtor as liquidated damages is denied. Trustee is entitled to take possession of the Truck, the Trailer, and the Roadstar. Debtor is obliged to cooperate with Trustee. *See* § 521(a)(3) (providing that "a debtor shall, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title . . . ."). When Trustee has the vehicles, he must return the $5,000 to Debtor, less any bank fees incurred while holding it.[10]

//

//

---

[10] In his complaint, Trustee also requested a judgment against Debtor for costs incurred in prosecution of this action. To obtain such relief, Trustee is invited to comply with Local Rule 7054.1.

MEMORANDUM OF DECISION – 18

A separate judgment will be entered.

Dated: February 6, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 19